# Rose's Estate.

*Will—Probate—Testamentary capacity.*

In a will contest it appeared that testator at the time of his death was eighty years old, and that when he signed the paper in question, was in bed and in his last illness. About two months before his death he dictated his testamentary wishes to his daughter, and told her that he would show the paper to his counsel. About ten days before his death he directed the paper to be taken to his counsel, and the latter made a draft in legal form, and read it to decedent, who acquiesced in it and signed the paper. On the same day counsel thinking that a power of sale should be added, rewrote the will, adding the additional clause, and the will as finally written was then signed by the testator and witnessed. Several witnesses declared that the decedent at the time was entirely sane, and fully cognizant of the provisions of the will. *Held*, that the will was properly admitted to probate.

Argued Jan. 6, 1909. Appeal, No. 197, Jan. T., 1908, by George W. Rose, from decree of O. C. Phila. Co., Jan. T., 1907, No. 438, dismissing appeal from Register of Wills in Estate of Dominicus Rose, deceased. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Appeal from register of wills.

ASHMAN, P. J., filed the following opinion:

Several years before his death the testator had repeatedly expressed with some emphasis his intention to give to his children the income only of his property, leaving the principal to their descendants. The purpose, he stated, had been suggested on reading the will of a friend and neighbor. His own will is framed on this line, and nothing on its face or in the testimony

shows any want of testamentary capacity or any exercise of undue influence in its execution. The decedent was about eighty years old at death. His children consisted of a son and two daughters, both of the latter residing with their father. In July of the year of his death he directed his married daughter to take down in writing his testamentary wishes, and he told her he would show the paper to his counsel. On August 24, he directed the paper to be taken to the counsel with the direction to draw therefrom a will in legal form. Counsel made such a draft and read it to the decedent, who acquiesced in it and signed the paper. The counsel himself, on reflection, concluded to add a power of sale, and accordingly rewrote the instrument, which on the same day he took to the decedent, explaining to him the additional clause and receiving his assent thereto. The will as finally written was then signed and witnessed. The decedent was declared by the several witnesses to have been at the time entirely sane and fully cognizant of the provisions of the will. He was in bed, suffering from a fatal disease, and was very weak physically. His daughter, Mrs. Reimel, supported his wrist while he sat up in bed, but the writing of the signature was his own unaided act. This short recital embodies all the material facts which were in evidence. Certainly nothing in those facts discloses a reason for setting aside the action of the register in admitting the will to probate.

One witness, a clergyman, testified that he visited the decedent three weeks before the will was signed, and also on the day of signing. He declared that on both occasions the decedent answered intelligently the questions which were put to him, and was mentally capable of transacting any business of importance.

January 27, 1908. The appeal from the register is accordingly dismissed.

*Error assigned* was the decree of the court.

*P. A. Wildermuth,* for appellant.

*Evans & Forster,* for appellee.

PER CURIAM, February 15, 1909:

The order dismissing the appeal from the register is affirmed for the reasons stated in the opinion of the learned president of the orphans' court.